[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR JOINDER
In this motion, the State seeks to join three informations filed against the defendant, Michael Fauci. In each information, the defendant is charged in one count with the crime of Robbery in the First Degree in violation of C.G.S. §§ 53a-134 (a) (4) and in a second count with the crime of Conspiracy to Commit Robbery in the First Degree in violation of §§ 53a-48 and 53a-134 (a) (4).
Joinder of several in formations filed against a single defendant is authorized by General Statutes 54-57 and Practice Book 41-19.
"The purpose of joinder . . . is to foster economy and expedition of judicial administration. State v. Schroff, 198 Conn. 405, 409, 503 A.2d 167
(1986); see State v. King, 187 Conn. 292, 296-98, 301, 445 A.2d 901
(1982). Joinder of offenses is, however, not permissible if it will result in `substantial injustice' to the defendant. State v. Boscarino,204 Conn. 714, 721, 529 A.2d 1260 (1987), quoting State v. King, supra, 302; see State v. Schroff, supra; State v. Rodgers, 198 Conn. 53, 65,502 A.2d 360 (1985); A. Spinella, Connecticut Criminal Procedure (1985) p. 415, citing State v. Silver, 139 Conn. 234, 240, 93 A.2d 154 (1952)."State v. Greene, 209 Conn. 458, 462, 551 A.2d 1231 (1988).
The State claims that two of the alleged robberies took place at McDonald's Restaurants, one in the City of Norwalk and the other in the Town of Orange. The third alleged robbery occurred at another fast food restaurant, Taco Bell in Norwalk.
The State claims it will offer evidence that in all three cases, the perpetrators displayed a weapon and threatened restaurant employees, both verbally and physically. In each case, one of the participants pointed a gun at the head of at least one employee. In addition, the suspects stole cash from registers, deposit bags, or safes. In the Orange incident, the perpetrators actually removed the safe from the store. In the other two incidents the perpetrators attempted to gain access to or take the CT Page 2961 safes. The robberies took place in the late evening and early morning hours when the restaurants were occupied by employees only.
The State claims that the co-conspirators allegedly involved in these crimes will be called as witnesses by the State and are expected to testify on behalf of the State.
The State claims that it would be appropriate to join these in formations because they meet the standards for joinder of in formations as established by our Supreme Court.
"These factors include: (1) whether the charges involved discrete easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." State v. Atkinson, 235 Conn. 748, 764, 670 A.2d 276
(1996), [citing, State v. Jennings, 216 Conn. 647, 658 (1990); accordState v. Herring, 210 Conn. 78, 95 (1989).
As to the first factor, whether the charges involved discrete easily distinguishable factual scenarios, the State claims that a jury would have no trouble distinguishing among the three robberies. The incidents took place at different locations, one in a different town, on separate dates, and each involved different victims and restaurants.
As to the second factor, whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part, the State claims that although the charges here are serious, the degree of any brutality and violence in all three cases is practically identical and within the ambit of the facts addressed in State v. Greene, supra, where the two robberies in question had been joined. There the robberies were committed three days apart at small retail establishments in Milford in the early evening. The perpetrator of each robbery was a man wearing a ski mask and wielding a shotgun.
In Greene, supra, at 464, the Court stated:
There are a number of ways by which defendants traditionally have challenged the joinder of offenses. In State v. Boscarino, supra, this court stated that the nature of the charges against the defendant may be important in determining prejudice by joinder. If there is "brutal or shocking" evidence in one of the cases, it could affect the jury's decision in the other. Id., 723 (evidence of rapes). In this case, CT Page 2962 however, the evidence offered for both offenses was similar, and although the charges are serious, the evidence offered was not shocking and would not incite the passions of the jurors so as to prejudice the defendant as he claims.
Here, the State asserts there was no discharge of a firearm and no injuries to victims in any one of the cases. The level of brutality and violence in all three cases is practically identical. The defendant's conduct as to one incident would not likely incite the passions of the jury as to all the cases. The perpetrators' threatening conduct in each case is virtually identical and, therefore, separate trials would not benefit the defendant.
Addressing the third factor to be considered, the duration and complexity of the trial, the State represents "the joinder of the three robbery cases will not create a complex or lengthy trial. Each case involved at least two of the three co-conspirators. These three coconspirators are expected to testify at trial. The robbery and conspiracy charges are not particularly complex. The facts alleged are not complicated. The three robberies were straightforward and short in duration. The defendant is charged with two counts in each information." (State's Motion, pp. 2-3).
The defendant has filed an objection to the motion for joinder. The defendant claims that joinder would result in undue prejudice to him if the motion were granted.
The defendant cites as the standard for determining if joinder would result in undue prejudice to the defendant our Supreme Court's guide inState v. Atkinson, 235 Conn. ___, 708, 763, 670 A.2d 276 (1996):
We recognize that an improper joinder may expose a defendant to potential prejudice for three reasons. "First, when several charges have been made against the defendant, the jury may consider that a person charged with doing so many things is a bad [person] who must have done something, and may cumulate evidence against him . . . Second, the jury may have used the evidence of one case to convict the defendant in another case even though that evidence would have been inadmissible at a separate trial . . . [Third,] joinder of cases that are factually similar but legally unconnected . . . present[s] the . . . danger that a defendant will be subjected to the omnipresent risk . . . that although so much [of the evidence] as would be admissible upon any one of the charges might not [persuade the jury] of the accused's guilt, the sum of it will convince them as to all." (Citations omitted; internal quotation marks omitted.) State v. Home, 215 Conn. 538, 546-47, 577 A.2d 694
CT Page 2963 (1990).
The Supreme Court, in Atkinson, also set the standard for a defendant to establish such possible prejudice:
"`The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. Statev. Boscarino, supra, 721, quoting State v. King, supra, 302; State v.Silver, 139 Conn. 234, 240, 93 A.2d 154 (1952). State v. Herring,210 Conn. 78, 94-95, 554 A.2d 686, cert. denied, 492 U.S. 912,109 S.Ct. 3230, 106 L.Ed.2d 579 (1989). [W]hether a joint trial will be substantially prejudicial to the rights of the defendant . . . means something more than that a joint trial will be less than advantageous to the defendant . . .' (Internal quotation marks omitted.) State v.Jennings, 216 Conn. 647, 657-58, 583 A.2d 915 (1990); accord State v.Herring, supra, 94-95." Atkinson, supra, 763.
The defendant claims that he would be prejudiced by joinder on three possibilities. The first claim is that consolidation of the three armed robbery cases would subject the defendant to the very real risk that a jury would impermissibly conclude the defendant was a "bad" person, given the numerous charges, and therefore convict him of something (without regard to the evidence). The second claim is that joinder of these actions would run the very real risk that a jury, despite instructions to the contrary, would impermissibly apply evidence of one crime to another, where that evidence would not be admissible in a separate trial. And the third claim is that joinder of these three separate actions would subject this defendant to the impermissible risk that a jury would convict the defendant on the basis of all the evidence as to the three crimes, whereas the evidence related to any single crime would not likely meet the state's burden of proof. (Defendant's Objection To Joinder, pp. 5-6).
The defendant claims that in presenting the evidence in a trial in which these charges are joined, the following prejudice would result.
First, the three crimes charged are sufficiently similar for purposes of the first Atkinson concern to pose a risk of confusion.
The defendant also claims that the crimes charged are all armed robberies where the state will accuse the defendant of having brandished a gun and having pointed the gun at the victims. The second concern ofAtkinson relates to the cumulative effect of three admittedly violent CT Page 2964 allegations involving guns being pointed to the heads of innocent civilians and the accepted and acknowledged risk that this would improperly inflame the jury to believe that the defendant must be a "bad" person who had done something wrong as he was being accused of so many heinous acts, using the evidence in one case to convict the defendant in another case, even though that evidence would have been inadmissible at a separate trial.
Thirdly, the defendant claims that joinder of the three separate actions would submit the defendant to the impermissible risk that a jury faced with a complex mixture of evidence would convict the defendant on the basis that the evidence might be conflated so that although so much of the evidence as would be admissible upon any one of the charges might not persuade the jury of the accused's guilt, the sum of it will convince them as to all. To that end, the defendant posits a long and complex trial if these informations are joined. He asserts that:
The only direct evidence believed to exist against this defendant is testimony of two individuals who confessed to the crimes and implicated this defendant in exchange for leniency. The state's case will accordingly rely to a great extent on circumstantial evidence, increasing both the complexity and length of trial. The defendant expects, in each case, the state to put on the testimony of the victims (two to three per incident), the investigating officers (three to four per incident), the reporting officers (two to three per incident) and forensic evidence and testimony (one to two witnesses per incident) regarding materials obtained at the scene of the crime and afterwards. The state's case will be further complicated by the fact that a number of different police departments are involved (Orange and Norwalk), implicating numerous different policies and procedures, and three different establishments were effected. In total, the defendant is anticipating over forty witnesses and as many as sixty witnesses for the three cases combined. This is precisely the type of complex and difficult matter that the third concern of Atkinson warns against.
(Defendant's Objection To Joinder, pp. 7-8).
A claim similar to the defendant's first objection, "that consolidation of the three armed robbery cases would subject the defendant to the very real risk that a jury would impermissibly conclude the defendant was a `bad' person, given the numerous charges, and therefore convict him of something (without regard to the evidence)," was raised in the case ofState v. Rivera, 52 Conn. App. 503, 728 A.2d 518 (1999). There, the Appellate Court upheld the joinder of four informations each charging robbery in the first degree in violation of General Statutes § 53a-134
CT Page 2965 and in three of the cases a second count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and53a-134. In one case, on October 21, 1995, two men robbed a Dairy Mart in Bristol, taking $600. Both men wore hooded sweatshirts and had their faces covered, and one of them had a gun. In a second case, the same Dairy Mart was robbed again on November 8, 1995, and more than $350 was taken. That robbery was committed by a lone gunman whose face was covered with a white cloth. In a third case, on November 10, 1995, two hooded men robbed a liquor store in Bristol, taking $296. Each of the men had a shirt wrapped around his face. One of the men was armed. In the fourth case, on November 11, 1995, two men robbed a Cumberland Farms in Bristol. Each man was armed and had covered his face with white cloth. They took approximately $133.
The Appellate Court held that:
while each of the four robberies joined for trial contained many similar facts, the charges against the defendant were distinguishable and the evidence on each of the charges was presented in an orderly fashion. The jury was instructed by the trial court to treat each information separately, both during the trial and in its charge. There was no allegation of brutal and shocking conduct on the part of the defendant, nor was the trial lengthy or complex, lasting nine days, only five and one-half of which were occupied with the taking of evidence . . . [W]e conclude that the defendant was not prejudiced by the consolidation of the four cases for trial.
State v. Rivera, supra, at 512.
In the case of State v. Arceniega, 73 Conn. App. 288, 807 A.2d 1028
(2002), the defendant was charged in four separate informations each containing three counts, to wit: count one, conspiracy to possess heroin in violation of §§ 53a-48 and 21a-279 (a); count two, conspiracy to sell heroin in violation of §§ 53a-48 and 21a-278 (b); and count three, conspiracy to sell heroin within 1500 feet of a public school in violation of §§ 53a-48 and 21a-278a (b). The state moved to join the four informations and the motion was granted. The defendant claimed the joinder was improper because, inter alia, the consolidation prejudiced him since the four cases were factually too similar to be easily distinguished by the jury.
Addressing that claim, the Appellate Court held:
we conclude that the court did not prejudice the defendant by consolidating the cases against him. First, we conclude that the facts CT Page 2966 were discrete and easily distinguishable. See State v. Banks,59 Conn. App. 112, 123, 755 A.2d 951, cert. denied, 254 Conn. 950,762 A.2d 904 (2000). Although each of the four transactions giving rise to the conspiracy charges involved similar factual scenarios, including the same participants, the transactions took place in different places at different times. Moreover, the evidence on each of the charges was presented in an orderly fashion.
Arceniega, supra, at 299.
While here, there will be witnesses called to establish the circumstances of each of the three alleged robberies, the defendant has demonstrated no concrete information that the state could not present evidence on each of the charges in an orderly fashion.
With regard to the concern raised by the defendant, whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part, this court takes note of the case of State v. Cook,70 Conn. App. 114, 796 A.2d 1269 (2002).
In that case, the trial court allowed joinder for trial a charge of attempt to commit robbery in the first degree with two charges of robbery in the first degree. The cases involved alleged robberies of convenience stores. In each of the events, the perpetrator pointed a shotgun at the employees. The Appellate court held, on the issue raised by this defendant claiming the brutal and violent nature of the alleged conduct would militate against severance, that "Although the crimes involved an element of potential violence, they were not brutal or shocking in nature." State v. Cook supra, at page 121.
In the case of State v. Lewis, 60 Conn. App. 219, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 912 (2000), the Appellate Court clarified when severance might be considered if a "brutal and shocking" claim is raised.
Second, we consider the defendant's claims that the allegations of the violent attacks in each of the three cases were so brutal and shocking that the court abused its discretion in consolidating the cases. Statev. Jennings, [216 Conn. 647, 583 A.2d 915 (1990)], cites both Boscarino
and [State v. Herring, 210 Conn. 78, 554 A.2d 686, cert. denied,492 U.S. 912, 109 S.Ct. 3230, 106 L.Ed.2d 579 (1989)], to reiterate that when both crimes charged can be characterized as violent, the test becomes whether the facts of one are "so brutal or shocking as to amount to prejudice if tried together." State v. Stevenson, 43 Conn. App. 680,690, 686 A.2d 500 (1996), cert. denied, 240 Conn. 920, 692 A.2d 817
CT Page 2967 (1997).
In the first robbery, the assailant beat the victim with a baseball bat. In the second robbery, the assailant beat the victim with the butt of a shotgun. In the third robbery, one of the assailants beat the victim with his fist and banged his head against a glass door. Hence, the factual scenarios of each of the three cases involved similar acts of violence. Therefore, it is reasonable for the court to conclude that no one incident was so brutal or shocking as to amount to prejudice if tried together.
State v. Lewis, supra, at page 228-29.
As to the defendant's claimed complexity of the trial if joinder is granted, manifested by his estimate of the number of witnesses — "over forty witnesses and as many as sixty witnesses for the three cases combined" — that might be called and the length of the trial he projects, these claims seem somewhat hyperbolic. The State, in its brief, claims the evidence will be presented in a relatively straight-forward manner. In the Lewis case, the Appellate Court cited several cases in which joinder was upheld:
In State v. Herring, [supra,] 210 Conn. 97, a double murder case that took eight days to try and involved testimony from twenty-three witnesses, the court concluded that neither the duration of the trial nor its complexity created a sufficient risk of confusion to require severance. In State v. Delgado, [supra], 243 Conn. 536, a case involving a trial on first degree manslaughter and risk of injury to a child, the trial consumed eleven days and involved testimony from twenty-five witnesses. The court concluded that it was not too lengthy or complex so as to present a likelihood of jury confusion. Id., 536-37.
Lewis, supra, at 231.
The ultimate basis for the defendant's objection to joinder is his assertion that the State's claim that joinder in this particular circumstance is warranted because the robberies are legally related is incorrect.
The State maintains the similarity in the method that was used to commit the robberies show a common scheme, plan, and system of criminal activity. All three robberies occurred at fast food restaurants. The participants had knowledge of the layout and acted in a similar manner in each case. Since all three robberies demonstrate a common scheme or plan, the State claims the evidence of one crime is admissible to prove CT Page 2968 the others.
The defendant concedes that while as a general rule, evidence of prior misconduct is inadmissible to prove that a defendant is guilty of the crime of which he is accused, such evidence may be admissible, however, for other purposes, such as to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency.
However, the defendant cites State v. George B., 258 Conn. 779,785 A.2d 573 (2001) for the proposition that evidence of other acts may only be introduced to show a common scheme or design where the offenses have so much in common that "`it may be logically inferred that if the defendant is guilty of one he must be guilty of the other . . . It is not enough that the two offenses are similar. To establish a common design, the characteristics of the two offenses must be sufficiently distinctive and unique as to be like a signature.'" George B., supra, at 791 (quotingState v. Jones, 205 Conn. 638, 661 (1987).
It is the defendant's claim that while the facts at issue are admittedly similar: armed robberies, after-hours, of fast-food chains, where the perpetrators showed interest in the establishment's cash-box or safe. These factors are not enough, however, to permit introduction of the various evidence as a "signature" that is "sufficiently distinctive and unique" so as to "logically infer that if the defendant is guilty of one he must be guilty of the other," citing George B., supra, at 791.
The defendant argues that to the contrary, armed robberies often involve guns. Robbers often point their guns. Fast-food restaurants (along with convenience stores and gas stations) are typical targets. Robbers often strike after hours to limit the number of potential witnesses. And the perpetrators interest in the cashboxes or safes is far from unique.
In sum, it is the defendant's claim that the similarity of the crimes poses a very real risk that a jury will improperly conflate the various evidence, and will improperly lump the crimes together. He argues that, as a legal matter it is far from clear that these crimes were committed with such a common mode of operation as to constitute a "signature" thereby allowing the evidence of one to be admissible as to all. To the contrary, the allegations appear to set forth nothing more than a series of robberies performed in southern Connecticut, against a number of different fast-food establishments, taking place after business hours, and involving guns and an interest in money-boxes or safes. These CT Page 2969 allegations fall far short of providing "signature" evidence.
Because joinder would impermissibly permit the jury to hear all three of the cases before deciding any of them, this defendant would be severely prejudiced.
The defendant's claim is that joinder would not be warranted because the evidence would not be sufficient to establish the purported legal relationship of a common scheme, since it would lack the requirement that the characteristics of the offenses must be sufficiently distinctive and unique as to be like a signature, citing State v. George B., 258 Conn. 779,791, 785 A.2d 573 (2001).
The cases, such as George B., supra, that use this terminology "like a signature," base it on C. McCormick, Evidence (3d Ed. 1984) 190, p. 560. But, the phrase is not a straight-jacket. In State v. King,35 Conn. App. 781, 790-91, 647 A.2d 25 (1994), affirmed, 235 Conn. 402,665 A.2d 897 (1995), Appellate Court held:
We agree with the trial court's conclusion that joinder was proper because evidence relating to each case could have been used in the others to show the identity of the defendant or to show a common scheme. To be relevant on the issue of identity or common scheme, the other crime charged must be "sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other." State v.Ibraimov, 187 Conn. 348, 354, 446 A.2d 382 (1982). The similarities connecting the crimes need not be so unique as to constitute "signature crimes." See State v. Pollitt, supra, 205 Conn. 69-70. Rather, the features may be of substantial but lesser distinctiveness which, if considered separately, would be insufficient to raise an inference, but when taken together yield a distinctive combination. State v. Jones,205 Conn. 638, 661, 534 A.2d 1199 (1987).
In State v. Lewis, 60 Conn. App. 219, 759 A.2d 518 (2000), another case involving the joinder of three robberies, the Appellate Court upheld the joinder, noting, "each of the three cases had discrete, easily distinguishable factual scenarios. As the state points out, the incidents took place on different dates, at different locations and involved different victims. Furthermore, the state presented the evidence in a manner unique to each case to avoid `spilling over' of the evidence as much as possible."
Addressing the defendant's claim that the three cases were not legally connected, the Court stated: "while the robberies may not be considered signature crimes, all three were of that degree of similarity that their CT Page 2970 evidence could reasonably give rise to an inference that the participants were the same persons."
In the present cases, the expected testimony of the co-defendants, if credited, would supply "not only a factual connection in the three cases, but vital legal connections in these cases." (Quotations fromLewis, supra, at 227-28.)
The final objection raised by the defendant, is his claim that he may present alibi testimony as to one or two of the crimes charged. If joined, the defendant's failure to provide alibis for all the charged crimes may be impermissibly viewed by the jury as an admission of sorts. The defendant may further choose to testify as to certain of the cases, in part to confirm the alibi, but not others. If the defendant testifies as to one but fails to testify as to others, he will likely be subjected to additional and avoidable prejudice (i.e., the jury would conclude that he must have done the others since he did not testify for those, but did for others).
"An accused election to testify on some but not all of the charges on trial does not automatically require severance." State v. King,187 Conn. 292, 304, 445 A.2d 901 (1982).
"No need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." Id., at 306. See, also, State v. Edwards, 10 Conn. App. 503, 507, cert. denied,204 Conn. 808 (1987).
In State v. Schroff, 198 Conn. 405, 408-10, 503 A.2d 167 (1986), similar claims were raised. The Schroff Court stated:
We have recently approved of the analysis employed by the Court of Appeals for the District of Columbia in Baker v. United States,401 F.2d 958, 977 (D.C. Cir. 1968), cert. denied, 400 U.S. 965,91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Baker held that "no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information — regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other — to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of `economy and expedition in judicial administration' against the defendant's interest in having a CT Page 2971 free choice with respect to testifying." Id.; see also Blunt v. UnitedStates, 404 F.2d 1283, 1289 (D.C. Cir. 1968); State v. Rodgers, supra, 65; State v. King, supra.
In the present matter, although the defendant did declare that he wanted to testify with respect to the first three counts but not on the firearms counts, he at no time disclosed the substance of his expected testimony, and he demonstrated no reason for his not wanting to testify on the other counts. In effect, this deprived the court of the ability to make a decision that any claim of prejudice was genuine.
The defendant's complete failure to substantiate his claim of prejudice falls far short of the "convincing showing" required by our cases. Statev. Rodgers, supra; State v. King, supra. The defendant has failed to sustain his heavy burden of showing that the denial resulted in a substantial injustice or prejudice. We cannot find an abuse of discretion in the trial court's denial of the defendant's motion to sever.
Here the defendant has not met that standard. He has not yet complied with the request for a notice of alibi nor has he presented any information as to what important testimony he wishes to present on any count nor any strong need to refrain from testimony in any other count.
In sum, the State has presented adequate grounds for joinder and the defendant's objections, at the present time, fail to establish the heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions.
The Motion for Joinder is granted and the Defendant's Objections are overruled.
Nigro, J.T.R. CT Page 2972